IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BILLY BUTLER,                         )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )    No. CIV-17-364-F
                                      )
                                      )
   HECTOR RIOS, et al.,               )
                                      )
          Defendants.                 )

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner who appears *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. United States District Judge Friot referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

I. Background and Complaint

In his Complaint, Plaintiff states that he is confined at the Lawton Correctional Facility ("LCF"), a private prison in Lawton, Oklahoma. LCF contracts with the Oklahoma Department of Corrections ("ODOC") to house Oklahoma inmates. Plaintiff is serving six, 26-year concurrent sentences for four armed robbery convictions, a conviction for assault and battery with a dangerous weapon, and a conviction for being a felon in possession of a firearm.

Plaintiff is confined in a maximum security unit at LCF. In a Facility Assignment Form completed at Joseph Harp Correctional Center ("JHCC") in December 2015 by Plaintiff's JHCC Facility Classification Committee ("FCC") members, the committee members recommended Plaintiff for transfer to a maximum security facility because he had "vowed that to earn his 'patch' with the Irish Mob (STG) he will carry out an attack on anyone he is ordered to. On 12/6/15 he attacked an ex-[United Aryan Brotherhood] offender at JHCC and had possession of a homemade knife during the attack. Information was received that this was due to an order from Irish Mob. His continued presence in general population is a security risk for staff and other offenders." Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. # 27), Ex. 2. The form indicates that the committee members' request was received by ODOC's Classification & Population office on December 10, 2015, and that on December 11, 2015, ODOC's Population Officer assigned Plaintiff to LCF's maximum security unit. The form also indicates Plaintiff was transferred to LCF on January 7, 2016.

In his claim for relief under 42 U.S.C. § 1983, Plaintiff alleges that he was subjected to cruel and unusual punishment in violation of his Eighth Amendment rights when

> Defendants Gordon and Clark conspired and became

> complicit with Aryan Brotherhood's [sic] and deliberately and intentionally opened the door of these known prison gang members to have Plaintiff killed. Defendants Gordon and Clark are both Aryan sympathizers. This attack happen[ed] due to Plaintiff had previously had an argument with defendant Gordon. Due to her discriminating against Plaintiff, Plaintiff was told by Defendant Gordon you will learn to watch your mouth. This conversation took place on the intercom in Plaintiff's cell. Plaintiff did not know defendant Gordon was listening in on a conversation between Plaintiff and his cellmate. Defendant Gordon opened the door of the Aryan inmates and allowed them to stick a 'Rig' in there [sic] door. The Aryan inmates placed the rig in the door and waited for Plaintiff to be shackled at the feet and handcuffed behind his back. When Plaintiff walked by, the Aryan inmates came out of there [sic] cell and started stabbing Plaintiff repeatedly, all over Plaintiff's body. . . . Sevral [sic] African American inmates had warned Plaintiff to be careful, due to Gordon will 'pop' doors for the Aryans. Therefore Plaintiff asked the guards before he ever exited the cell, "Y'all not going to set me up are you?" This is maximum security. The doors must be opened from the control room. The inmates can't open their doors from the inside. As of this date, the Aryan's [sic] are still bragging about severly [sic] wounding me. Each time Gordon enters the pod the Aryans all solute [sic] her. Due to the actions of defendant Gordon, Plaintiff was savagely attacked. Plaintiff now suffers from schizophrenia and P.T.S.D. along with pain in his back and neck.

Complaint (Doc. # 1), at 6-7. Later in the Complaint, Plaintiff alleges that "defendant Clark along with defendant Gordon wanted Plaintiff hurt. The control panel clearly showed the Aryan inmates door was opened prior to them coming out"

3

of their cell. Complaint, at 10. "Defendant Clark knew their door was ajar [and] watched Plaintiff [be] stabbed repeatedly within an inch of his life. Defendant Clark deliberately and intentionally set Plaintiff up to be attacked." Complaint, at 10.

In this claim, Plaintiff alleges that Defendant Rios "knew of the danger I would face" and "knew or reasonably should have known that when he opened/created a unit to get more funds from the state of Oklahoma that [sic] if he placed rival gang members on the same pod right next door to each other with corrupt staff such as Gordon and Clark an attack would be imminent." Complaint (Doc. #1), at 6, 9. Plaintiff alleges that Defendant Dawson "was the defendant [sic] over the unit where the altercation occurred" and Defendant Dawson "had been warned prior to the assault by African American inmates concerning Gordon and that potential danger loomed and was evident and abundantly clear an attack was going to occur." Id.

Plaintiff presents repetitive allegations concerning Defendants Rios, Dawson, Gordon, and Clark in Claim II of the Complaint, but he has not clearly stated any additional claims for relief against a named Defendant. Plaintiff seeks compensatory and punitive damages against Defendants in their individual capacities.

Defendants Rios, Dawson, Gordon, and Clark have filed under seal a Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. # 27).

4

Although Plaintiff was notified by Order entered October 20, 2017 (Doc. # 28) of his obligations in responding to Defendants' Motion and given until November 13, 2017, to file his responsive pleading, to this date Plaintiff has not responded to the Motion. In their Motion, Defendants rely on evidentiary documents beyond the pleadings to support their request for judgment in their favor. Accordingly, Defendants' Motion will be considered solely as a motion seeking summary judgment under Fed. R. Civ. P. 56.

II. Standard of Review - Motion for Summary Judgment

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to

be true." Burke, 462 F.3d at 1258 (internal quotation marks and citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted).

III. Material, Uncontroverted Facts

In their Motion, Defendants have set forth a statement of undisputed facts. By Order entered October 20, 2017, Plaintiff was advised of his obligations under Fed. R. Civ. P. 12 and 56 and the Court's local procedural rules in responding to Defendants' Motion. Plaintiff was also advised that if his responsive pleading did not comply with Rule 56 the Court could declare that the material facts set forth in Defendants' Motion are deemed to be admitted and established as true. Plaintiff has not responded to Defendants' Motion. Accordingly, the statement of undisputed facts in Defendants' Motion sets forth the material, uncontroverted facts relevant to the disposition of Defendants' Motion.

The material, undisputed facts are as follows:

1. At all times pertinent to the allegations in the Complaint, Defendant Rios was the Warden at LCF and Defendants Gordon, Clark, and Dawson were employees at LCF.

2.. On April 6, 2016, between the hours of 6:00 a.m. and 2:00 p.m. (0600 to 1400

hours) LCF Correctional Officer Clark was on duty at LCF and her duties included, among others, the operation of the control panel which controlled the opening and closing of cell doors in the segregated unit in which Plaintiff resided on that date.

3. On April 6, 2016, LCF Correctional Officer Gordon was not on duty as it was her scheduled day off at LCF.

4. On April 6, 2016, LCF Captain (then Lieutenant) Dawson was on duty at LCF but left LCF at approximately 5:30 p.m.

5. On April 6, 2016, at 7:19 p.m. (1919 hours), LCF Correctional Officers Smith and Gregg placed Plaintiff in full restraints and began to escort him down the stairs to the recreational yard on Bravo Pod.

6. On April 6, 2016, at approximately 7:19 p.m. (1919 hours) offenders Long and Wade pushed open their cell door by unknown means and attacked Plaintiff with a homemade weapon.

7. At that time, Officer Smith used chemical agents to stop the assault and separated the offenders. Offenders Long and Wade were ordered to lay on the ground.

8. Shortly after the assault, Plaintiff was taken to the hallway. It was noted he suffered two puncture wounds in the upper area of his back. At that time, LCF Correctional Officers Tyler and Nichols and Lieutenant Sullen administered first aid.

9. On April 6, 2016, at approximately 7:45 p.m. (1945 hours) the Lawton Police

Department was advised of the incident. Lawton police officers arrived at LCF and completed a report concerning the incident.

10. On April 6, 2016, at about 8:50 p.m. (2050 hours) Plaintiff was transported by ambulance to the Comanche County Memorial Hospital where he was examined and admitted to surgery and treated for his injuries.

11. According to the Lawton Police Department's report prepared in relation to the assault, Plaintiff advised a Lawton police officer at the hospital following the assault that "he is a member of the Irish Mob [prison gang] who is currently at war with the United Aryan Brotherhood [prison gang]. [Plaintiff] stated that he was walking out to the recreation yard when he heard several people yelling. [Plaintiff] stated that he then saw two males with no shirts on running towards him. [Plaintiff] stated that he was wearing handcuffs and leg shackles and attempted to defend himself. [Plaintiff] stated that he [wasn't] sure which person stabbed him. [Plaintiff] was treated for his injuries which included a collapsed lung." Defendants Motion, Ex. 8.

12. On April 9, 2016, Plaintiff returned to LCF from the Comanche County Memorial Hospital.

13. On May 12, 2016, Plaintiff was transported to the office of Dr. Michael A. Sawyer in Lawton, Oklahoma, where he was examined by Dr. Sawyer. Dr. Sawyer completed an office note indicating Plaintiff was "doing well" and could follow up

with treatment as needed.

IV. <u>Analysis</u>

Prison officials have a duty, imposed by the Eighth Amendment, "to protect prisoners from violence at the hands of other prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994). To prevail on a failure to protect claim, the prisoner must show "that he is incarcerated under conditions posing a substantial risk of serious harm," and that prison officials acted with "deliberate indifference to [his or her] health or safety . . . ." <u>Id.</u> at 834. Under this standard, liability of a prison official arises only if the officer both (1) knew the inmate faced a substantial risk of serious harm and (2) disregarded that risk by failing to take reasonable measures to abate it. <u>Id.</u> at 837. A plaintiff asserting a claim of deliberate indifference to his safety under the Eighth Amendment "must present evidence supporting an inference that [the individual defendant] actually knew about a substantial risk of serious harm to his safety." <u>Verdecia v. Adams</u>, 327 F.3d 1171, 1175 (10th Cir. 2003).

Considering the uncontroverted facts in the light most favorable to Plaintiff, there is no material issue of fact for trial concerning Plaintiff's claim that Defendants failed to protect him from the April 6, 2016 assault upon him by other prisoners.

Personal participation in an alleged constitutional deprivation is a required element of a 42 U.S.C. § 1983 action against an individual. See <u>Fogarty v. Gallegos</u>,

523 F.3d 1147, 1162 (10th Cir. 2008)("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.")(internal quotation marks omitted). According to the undisputed facts, which are supported by the affidavits of Defendants Clark, Gordon, and Dawson, these Defendants were not on duty at LCF at the time of the alleged assault upon Plaintiff by inmates Long and Wade. Defendants' Motion, Exs. 4, 5, and 6.

Plaintiff's allegations in his Complaint against Defendants Clark, Gordon, and Dawson are conclusory and unsupported by evidence from which to infer these Defendants had actual knowledge of a substantial risk of harm to Plaintiff prior to the assault. With his Complaint, Plaintiff submitted a statement sworn under penalty of perjury. Complaint, Ex. 12. However, Rule 56 requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Plaintiff's declarations in his affidavit are speculative, subjective opinions, i.e., Defendant "Gordon was a Aryan Sympathizer" and "corrupt" and Plaintiff "was deliberately and intentionally set up to be attacked while a prisoner at Lawton Correctional Facility." Complaint, Ex. 12. Plaintiff's affidavit does not provide a declaration based on personal knowledge or admissible evidence to oppose

Defendants' Motion. Because the undisputed facts do not create a material issue of fact for trial concerning the personal participation of Defendants Clark, Gordon, and Dawson, Defendants Clark, Gordon, and Dawson are entitled to summary judgment concerning Plaintiff's Eighth Amendment claims against them.

Plaintiff has sued Defendant Rios in his supervisory capacity as the Warden at LCF at the time of the alleged assault. A plaintiff alleging a 42 U.S.C. § 1983 claim for relief against a supervisory official "must show an 'affirmative link' between the supervisor and the constitutional violation." Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 767 (10th Cir. 2013). In other words, "[t]o establish a violation of § 1983 by a defendant-supervisor, the plaintiff must establish, at a minimum, a deliberate and intentional act on the part of the supervisor to violate the plaintiff's legal rights." Wilson v. Montano, 715 F.3d 847, 858 (10th Cir. 2013).

Plaintiff contends that Defendant Rios is liable under 42 U.S.C. § 1983 because Defendant Rios knowingly "placed known rival gang members next door to each other. Defendant Rios has heard for himself the threats made by the Aryans. Defendant Rios knew that the Aryans wanted to kill me." Complaint, at 13.

"[A] prison official's failure to protect an inmate from a known harm may constitute a constitutional violation." Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993). In this case, Plaintiff has merely alleged that he was a member of a prison

11

gang that was "at war with" another prison gang. Plaintiff has not alleged with any specificity that Defendant Rios actually knew prior to the assault that Plaintiff had been threatened with harm. Without more, Plaintiff's membership in a prison gang, even one that is generally in conflict with another prison gang, is not sufficient to demonstrate Defendant Rios' knowledge of a specific, substantial risk of harm to Plaintiff. There are no facts from which a reasonable jury could infer that Defendant Rios was aware of and failed to act despite his knowledge of a substantial risk of harm to Plaintiff. Hence, Defendant Rios is entitled to summary judgment with respect to Plaintiff's Eighth Amendment claims against him.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. # 27), construed as a motion for summary judgment, be GRANTED and that judgment issue in favor of Defendants and against the Plaintiff. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by      December 20th, 2017, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore

v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this <u>    30th    </u> day of <u>    November    </u>, 2017.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE